PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

NIMATALLAH SHAFIK MASSIS,

*Petitioner,*

v.

MICHAEL B. MUKASEY, United
States Attorney General,

*Respondent.*

No. 05-1329

NIMATALLAH SHAFIK MASSIS,

*Petitioner,*

v.

MICHAEL B. MUKASEY, United
States Attorney General,

*Respondent.*

No. 05-1851

On Petitions for Review of Orders of
the Board of Immigration Appeals.

Nimatallah Shafik Massis,

                    *Petitioner-Appellant,*

                    v.

Michael Chertoff, Secretary of
Homeland Security; Michael J.
Garcia, Assistant Secretary;
Calvin McCormick, Interim Field
Office Director; Michael B.
Mukasey, United States Attorney
General,

                    *Respondents-Appellees.*

No. 05-6981

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CA-05-1242-8-PJM)

Argued: September 24, 2008

Decided: December 9, 2008

Before NIEMEYER, KING, and DUNCAN, Circuit Judges.

Denied in part and dismissed in part by published opinion.
Judge Duncan wrote the opinion, in which Judge Niemeyer
and Judge King joined.

**COUNSEL**

**ARGUED:** Rachel Stutz, WILMER, CUTLER, PICKER-ING, HALE & DORR, L.L.P., Washington, D.C., for Petitioner/Appellant. Woei-Tyng Daniel Shieh, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondents/Appellees. **ON BRIEF:** Paul R. Q. Wolfson, Victoria S. Shabo, WILMER, CUTLER, PICKERING, HALE & DORR, L.L.P., Washington, D.C., for Petitioner/Appellant. Jeffrey S. Bucholtz, Acting Assistant Attorney General, Civil Division, Susan K. Houser, Senior Litigation Counsel, UNITED STATES DEPARTMENT OF JUSTICE, Office of Immigration Litigation, Washington, D.C., for Respondents/Appellees.

---

**OPINION**

DUNCAN, Circuit Judge:

The petitioner, Nimatallah Shafik Massis, is a Jordanian national and a permanent resident of the United States. On February 25, 2005, the Board of Immigration Appeals ("BIA") found that Massis was deportable as an aggravated felon and that he did not qualify for a discretionary waiver of deportation under former section 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(c).[1] In these consolidated actions, Massis seeks review of the BIA's removal order on two grounds. First, Massis raises a claim of ineffective assistance of counsel based on his counsel's decision to concede deportability for Massis's June 6, 1995 conviction of reckless endangerment. Second, Massis argues that reckless endangerment is not a "crime of violence" and thus cannot form the basis of his deportation as an aggravated

---

[1]Section 212 was repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, § 304(b), 110 Stat. 3009, 3598–97.

felon. For the reasons that follow, we deny in part and dismiss in part the petitions for review.

I.

Massis was admitted to the United States as a lawful permanent resident on November 20, 1974. Evidence in the record shows that Massis had a history of hitting and pushing his wife, Hilda Massis. J.A. 54, 239. Massis and his wife eventually divorced in 1996.

On February 3, 1995, Massis was arrested after chasing his wife and two young girls with an ax in a residential neighborhood. Hilda Massis told the responding police officer that Massis "chased her up Parkland Drive screaming[,] 'I'm going to kill you,' while holding a wood ax above his head." J.A. 53. While in pursuit, Massis fell to the ground and Hilda Massis and the two girls were able to run into a neighbor's house for safety. The police report filed for the incident included statements from witnesses affirming that "if Nimatallah did not fall, he would have killed her." J.A. 54. At the time of his arrest, Massis was under a court order to avoid contact with Hilda Massis, although he had repeatedly violated this order and had declared in a Maryland state court proceeding that "even with a divorce, he would always consider himself married to his wife." J.A. 280.

On March 3, 1995, Massis was charged with intent to murder, carrying a weapon openly with intent to injure, criminal contempt and reckless endangerment. On June 6, 1995, he pled guilty to one count of reckless endangerment and one count of criminal contempt and was sentenced to five years imprisonment.[2] On June 28, 1996, the Immigration and Natu-

---

[2] At the time of Massis's conviction, the Maryland Code defined reckless endangerment as follows:

(a)   Any person who recklessly engages in conduct that creates a substantial risk of death or serious physical injury to

ralization Service initiated removal proceedings against Massis under 8 U.S.C. § 1227(a)(2)(A)(iii), which states that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable."[3] Represented by counsel at a merits hearing before an immigration judge ("IJ") on December 31, 1998, Massis conceded deportability as an aggravated felon based on his reckless endangerment conviction. He sought a waiver of deportation under 8 U.S.C. § 1182(c), which the IJ eventually granted on March 19, 2003.[4] Although the IJ noted that Massis "has a history of battering his wife and convictions which are related to his [spousal] abuse and inability or unwillingness to conform to acceptable standards of conduct," J.A. 240, the IJ found that Massis suf-

---

> another person is guilty of the misdemeanor of reckless endangerment and on conviction is subject to a fine not exceeding $5,000 or imprisonment not exceeding 5 years or both.

Md. Code Ann. art. 27, § 120 (1995.

[3]At the time of Massis's removal proceeding, an "aggravated felony" included any "crime of violence (as defined in section 16 of Title 18 . . .) for which the term of imprisonment imposed (regardless of any suspension of imprisonment) is at least 5 years." Immigration and Nationality Technical Corrections Act of 1994, Pub. L. 103-416, § 222, 108 Stat. 4305, 4320–21 (1994) (current version at 8 U.S.C. § 1101(a)(43)(F)).

Title 18 U.S.C. § 16 defines a "crime of violence" as follows:

  (a)  an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

  (b)  any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

This definition was in force at the time of Massis's removal proceeding. *See* Pub. L. No. 98-473, Title II, § 1001(a), 98 Stat. 2136 (1984).

[4]Former section 212(c) of the Immigration and Naturalization Act gave the Attorney General authority to grant discretionary admission to certain aliens subject to deportation. *See generally Singh v. Keisler*, 255 F. App'x 710, 713–14 (4th Cir. 2007) (unpublished).

fered from mental illness and that "his actual behavior since his incarceration is strongly indicative of rehabilitation," *id.* at 241. The IJ concluded that "[i]t would be unconscionable to 'discard' [Massis], who has been so troublesome because of his mental illness, by jettisoning him into a violent region of the world where he will have inadequate support for his mental illness." *Id.* at 242.

The Department of Homeland Security ("DHS") appealed the IJ's decision to the BIA. On appeal, Massis was represented by different counsel. The BIA vacated the IJ's grant of section 212(c) relief on February 25, 2005, holding that Massis had not "demonstrated extraordinary circumstances that might warrant relief." J.A. 281. The BIA noted that the IJ's concern about "the supposed unavailability of psychiatric care in Jordan" was "not supported by persuasive facts" and emphasized that Massis had failed to accept responsibility for a "violent history about which he expresses little remorse." *Id.* The BIA found that Massis had "not shown himself to be a desirable resident of the United States" and ordered Massis deported to Jordan. *Id.* Massis filed a timely petition for review of the BIA's deportation order on March 25, 2005. J.A. 282.

Massis retained a third counsel and filed a petition for a writ of habeas corpus in the United States District Court for the District of Maryland on May 5, 2005, seeking "declaratory and injunctive relief to enjoin his imminent removal from the United States." J.A. 302-12. On June 27, 2005, the district court transferred the case to this court under section 106(a) of the REAL ID Act of 2005, which vests jurisdiction over such habeas petitions in the courts of appeals.[5] Both parties consented to the transfer order.

---

[5]Section 106(a) of the REAL ID Act states as follows:

Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas

In addition to his habeas petition, Massis filed a motion to reconsider and reopen with the BIA on May 25, 2005, asserting a claim for ineffective assistance of counsel based on his first counsel's concession of deportability at his 1998 removal hearing. J.A. 318-33. Relying on *Leocal v. Ashcroft*, 543 U.S. 1 (2004), Massis also argued that reckless endangerment did not constitute a crime of violence and that his conviction should not have subjected him to removal proceedings. The BIA denied this motion on July 26, 2005, on the ground that Massis had failed to "file a motion to reopen within a reasonable period of the alleged ineffective assistance." J.A. 364. In denying the motion, the BIA noted that Massis "had an opportunity to file a motion to remand proceedings based on ineffective assistance of counsel while his case was on appeal, but failed to do so" and instead "waited until almost 3 months after our February 25, 2005, decision to raise his ineffective assistance of counsel claim." *Id.* Massis filed a timely petition for review of the BIA's decision to deny his motion to reconsider and reopen on August 19, 2005. J.A. 370-72.

The following three petitions were consolidated for purposes of appeal:

- 05-1329, Massis's petition for review of the BIA's deportation order

---

corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e) of this section. For purposes of this chapter, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms 'judicial review' and 'jurisdiction to review' include habeas corpus review pursuant to section 2241 of Title 28, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory).

8 U.S.C. § 1252(a)(5).

- 05-6981, Massis's petition for a writ of habeas corpus

- 05-1851, Massis's petition for review of the BIA's decision to deny Massis's motion to reopen and reconsider

II.

In each of his petitions, Massis seeks to revisit his original counsel's concession of deportability on two grounds. First, he raises a due process claim, arguing that his counsel's concession of deportability in the 1998 removal hearing amounted to ineffective assistance. He argues that the BIA improperly denied his motion to reopen his case to consider this claim and asks this court to find that his counsel's ineffective assistance violated his due process rights. Second, Massis argues that this court may consider "the ultimate substantive question" of whether reckless endangerment constitutes a crime of violence—and whether Massis is removable—because the issue is "purely legal in nature" and because "[i]t would be a profound miscarriage of justice to remove him without either the agency or this Court considering the fundamental question of whether he is removable." Petitioner's Br. at 13.

Massis's arguments on appeal arise out of the recent Supreme Court decision in *Leocal v. Ashcroft*, 543 U.S. 1 (2004). In *Leocal*, the Supreme Court addressed whether a conviction of driving under the influence of alcohol ("DUI") constituted a crime of violence under 18 U.S.C. § 16. The Court held that a crime of violence involves a "substantial risk" of "using physical force against another person in the course of committing the offense" and found that a DUI under Florida law did not qualify as a crime of violence for the purposes of determining the petitioner's removability. 543 U.S. at 11 (internal quotations omitted). Massis cites *Minor v. State*, 605 A.2d 138 (Md. 1992), and related cases to argue on

appeal that the Maryland courts have held that reckless endangerment under Maryland law "does not require proof of any violent or forceful act of the defendant." Petitioner's Br. at 21. Although Massis conceded deportability based on his reckless endangerment conviction and failed to challenge this concession before the IJ or the BIA, Massis now contends that reckless endangerment under Maryland law does not qualify as a crime of violence under 18 U.S.C. § 16(b) and that he is not a convicted aggravated felon subject to deportation under 8 U.S.C. § 1227(a)(2)(A)(iii). He argues that his original counsel's decision to concede deportability amounted to ineffective assistance of counsel. He further contends that this court can and should examine whether reckless endangerment under Maryland law constitutes a crime of violence that can support a deportation order. We consider each argument in turn.

## A.

Massis did not attempt to assert his ineffective assistance of counsel claim until several months after the BIA found that he did not qualify for a discretionary waiver of deportability under former section 212(c) and ordered him deported to Jordan.[6] He now raises this claim in each of his petitions for

---

[6]Massis also argues that in reversing the IJ's decision to grant a discretionary waiver, the BIA erroneously applied the wrong standard of review to the IJ's factual findings and failed to consider all the evidence, as required by its past precedent. This argument is unavailing. The BIA properly stated that it reviews "the discretionary determination made by the Immigration Judge *de novo*." J.A. 279; *see also* 8 C.F.R. § 1003.1(d)(3)(ii). Although Massis correctly points out that the BIA must review factual findings under a clearly erroneous standard, *see* 8 C.F.R. § 1001.1(d)(3)(i), the Supplementary Information to section 1003.1 makes clear that this standard only applies to the factual determination of "'what happened' to the individual." Procedural Reforms to Improve Case Management, 67 Fed. Reg. at 54,888-90 (Aug. 26, 2002). In contrast, application of the law to those facts—to determine, for example, whether those facts amount to "exceptional and extremely unusual hardship"—may be reviewed *de novo*. *See id.*

review, arguing that his counsel's concession of deportability in the 1998 removal hearing was "plainly ineffective." Petitioner's Br. at 32. He further argues that because his counsel's ineffective assistance resulted in prejudice, the BIA's decision to deny his motion to reopen and reconsider was arbitrary and capricious. The DHS argues in response that "it was reasonable, as the law stood in 1998, [for Massis's original counsel] to conclude his crime was an aggravated felony" and that such a concession did not amount to ineffective assistance because it was not "so egregious that it rendered the hearing unfair." Respondent's Br. at 12. The DHS further argues that the BIA did not abuse its discretion in determining that Massis failed timely to raise his ineffective assistance of counsel claim. We agree.

The BIA's denial of a motion to reopen is reviewed for an abuse of discretion and should be reversed only if the decision is arbitrary, capricious, or contrary to law. *Afanwi v. Mukasey*, 526 F.3d 788, 794 (4th Cir. 2008) (citing *Immigration & Naturalization Serv. v. Doherty*, 502 U.S. 314, 323–24 (1992); *Barry v. Gonzales*, 445 F.3d 741, 744–45 (4th Cir. 2006)). "The BIA's denial of a motion to reopen is reviewed with extreme deference, given that motions to reopen are disfavored because every delay works to the advantage of the deportable alien who wishes merely to remain in the United States." *Barry*, 445 F.3d at 744–45 (citing *Stewart v. Immigration & Naturalization Serv.*, 181 F.3d 587, 596 (4th Cir. 1999)) (internal quotations and punctuation omitted).

In light of that standard, we first consider Massis's contention that his initial counsel's concession of deportability in the 1998 removal hearing was plainly ineffective. Citing *In re B-B-*, 22 I. & N. Dec. 309 (BIA 1998), for the proposition that a reasonable tactical decision by counsel cannot constitute ineffective assistance of counsel, the BIA rejected this argument. We cannot conclude that the BIA abused its discretion in doing so. The state of the law as it existed at the time of Massis's removal hearing supports the BIA's determination.

*Accord Mbea v. Gonzales*, 482 F.3d 276, 281 (4th Cir. 2007) (noting that the law "then in effect" at the time of an alien's conviction would apply to the alien's removal proceedings (citing *Immigration & Naturalization Serv. v. St. Cyr*, 533 U.S. 289 (2001))).

In 1998, the BIA had not addressed the question of whether reckless endangerment under Maryland law qualified as a crime of violence. Its precedent at that time had established that a crime of violence under 18 U.S.C. § 16(b) required a "risk of harm," but did not require a substantial risk that physical force may be used in the commission of an offense. For example, in *In re Alcantar*, 20 I. & N. Dec. 801 (BIA 1994), the BIA stated that 8 U.S.C. § 16 defines offenses that have "the potential of resulting in harm," such that "[o]nce the court determines that the defendant has been convicted of a crime that usually involves a risk of harm, the inquiry ends; it does not matter whether that risk has matured into actual harm." *Id.* at 809. *See also In re Magallanes-Garcia*, 22 I. & N. Dec. 1, 4 (BIA 1998) (holding that a crime of violence "must have 'the potential of resulting in harm'" (citation omitted)).

Federal courts of appeals subsequently began to reach a contrary conclusion, holding that a crime of violence requires a substantial likelihood that the perpetrator will intentionally employ physical force. *See, e.g.*, *Dalton v. Ashcroft*, 257 F.3d 200, 207–08 (2d Cir. 2001); *United States v. Hernandez-Castellanos*, 287 F.3d 876, 881 (9th Cir. 2002). The BIA also revisited the issue in *In re Luis Manuel Ramos*, 23 I. & N. Dec. 336, 336 (BIA 2002), holding that a DUI is not a crime of violence because it does not involve a substantial risk that physical force may be used in the commission of the offense. The Supreme Court, however, did not adopt that view until 2004. *See Leocal*, 543 U.S. at 11.

Given the state of the law in 1998, it was not unreasonable for Massis's original counsel to concede deportability based

on the Maryland reckless endangerment statute, which stated that any person who "recklessly engages in conduct that creates *a substantial risk of death or serious physical injury*" is guilty of reckless endangerment. Md. Code Ann. art. 127, § 120 (1995) (emphasis added). Such a concession is particularly understandable in light of counsel's decision to seek equitable relief in the form of a discretionary waiver of the deportation, which the IJ in fact granted. Massis has not shown that the BIA abused its discretion in refusing to allow Massis to revisit his concession of deportability by asserting an ineffective assistance of counsel claim.

Moreover, Massis has not shown that the BIA abused its discretion in denying his motion to reopen and reconsider. Under 8 C.F.R. § 1003.2(a), "[t]he decision to grant or deny a motion to reopen . . . is within the discretion of the Board." In denying Massis's motion, the BIA noted that Massis "chose to solely respond to the DHS's appeal" of the IJ's grant of section 212 relief; failed to file a motion to remand proceedings based on ineffective assistance while his case was on appeal; and delayed "until almost 3 months after [the BIA's] February 25, 2005 decision to raise his ineffective assistance of counsel claim." J.A. 363–64. Although Massis argues that he had no reason to enlarge the scope of the DHS's appeal of the section 212 waiver, he has not shown that the BIA abused its discretion in denying his motion to reopen and reconsider as untimely.

Finally, with respect to all of Massis's petitions for review, our recent decision in *Afanwi* forecloses Massis's due process claim based on ineffective assistance of counsel. In *Afanwi*, we held that an alien's "counsel's actions do not implicate the Fifth Amendment," such that the counsel's alleged ineffectiveness does "not deprive [an alien] of due process." 526 F.3d at 799 (noting that the alien's counsel "was not a state actor" and there was no "sufficient nexus between the federal government and counsel's ineffectiveness" to treat the counsel's actions as governmental action). Under *Afanwi*, Massis

cannot assert an ineffective assistance of counsel claim to challenge his concession of deportability in 1998.

For the foregoing reasons, Massis's due process claim based on ineffective assistance of counsel is denied.

B.

Massis also seeks to revisit his original concession of deportability on the substantive ground that reckless endangerment does not constitute a crime of violence under 18 U.S.C. § 16(b), rather than through the portal of an ineffective assistance of counsel claim. He argues that after *Leocal*, under Maryland law reckless endangerment can no longer be considered a crime of violence to support a deportation order. Massis does not dispute that he failed to raise the issue before either the IJ or the BIA. Relying on *Zhong v. United States Department of Justice*, 480 F.3d 104, 121–22 (2d Cir. 2007), Massis contends that "failure to exhaust individual issues before the BIA does not deprive [a court of appeals] of subject matter jurisdiction to consider those issues." *Id.* at 122. Massis further argues that this court may consider the issue because this court has "discretion to decide a purely legal issue not ruled on below when a miscarriage of justice will result from the court's failure to act." Petitioner's Br. at 39. In light of recent Supreme Court precedent, however, we are constrained to disagree.

Title 8 U.S.C. § 1252(d)(1) states that "[a] court may review a final order of removal only if the alien has exhausted all administrative remedies to the alien as of right." We have previously interpreted this provision as a jurisdictional bar. In other words, under 8 U.S.C. § 1252(d)(1), an alien's failure to dispute an issue on appeal to the BIA constitutes a failure to exhaust administrative remedies that bars judicial review. In *Kurfees v. Immigration & Naturalization Service*, 275 F.3d 332 (4th Cir. 2001), we found that we had no jurisdiction to consider the habeas petition of an alien who had failed to

appeal her 1993 deportation order and a 1997 denial of her motion to reopen. *Id.* at 336 ("It is well settled that parties must exhaust their administrative remedies before filing suit in federal court. . . . And we have held that district courts lack jurisdiction over the claims of aliens who have failed to exhaust their administrative remedies."); *see also Asika v. Ashcroft*, 362 F.3d 264, 267 n.3 (4th Cir. 2004) ("We have no jurisdiction to consider this argument, however, because [the alien] failed to make it before the Board and, therefore, failed to exhaust 'all administrative remedies.'" (citations omitted)).

We are not alone in regarding section 1252(d)(1) as imposing a jurisdictional hurdle; many of our sister circuits have held similarly. The First Circuit held in *Sunoto v. Gonzales*, 504 F.3d 56, 57 (1st Cir. 2007), that it lacked jurisdiction to review the BIA's decision on issues that an alien had failed to raise in his appeal before the BIA. Similarly, the Seventh Circuit has noted that the jurisdiction of the courts of appeals "is limited to direct review of final orders of removal and matters decided by ICE in the course of removal proceedings." *Fonseca-Sanchez v. Gonzales*, 484 F.3d 439, 443 (7th Cir. 2007). Other courts of appeals have held likewise. *See Heaven v. Gonzales*, 473 F.3d 167, 177 (5th Cir. 2006) ("[The alien] did not raise this issue before the BIA. . . . Consequently, [the alien] did not exhaust his administrative remedies with respect to this claim, and we lack jurisdiction to entertain it on appeal."); *Bonhometre v. Gonzales*, 414 F.3d 442, 447–48 (3d Cir. 2005) ("As a general rule, an alien must exhaust all administrative remedies *available to him as of right* before the BIA as a prerequisite to raising a claim before us. . . . [The alien's] procedural due process claims thus could have been argued before the BIA, and his failure to do so is thus fatal to our jurisdiction over this petition." (citations omitted)); *accord Frango v. Gonzales*, 437 F.3d 726 (8th Cir. 2006) (finding that "Congress likely intended by enacting § 1252(d)(1) to continue to require that an alien not only pursue all stages of administrative review, but also raise all issues before the agency"). *But cf. Bangura v. Hansen*, 434 F.3d

487, 494 (6th Cir. 2006) (noting that "[i]n the immigration context, several circuits have indicated that constitutional challenges to the INA and INS procedures and some due process claims do not require exhaustion because the BIA does not have the power to adjudicate these claims" and collecting authorities (citations and internal punctuation omitted)).

Massis relies on *Zhong v. United States Department of Justice*, 480 F.3d 104 (2d Cir. 2007), for the proposition that failure to exhaust individual issues before the BIA does not deprive the court of appeals of subject matter jurisdiction. The Second Circuit, however, has since retreated from that position. In *Grullon v. Mukasey*, 509 F.3d 107 (2d Cir. 2007), the Second Circuit noted that "[s]ubsequent to *Lin Zhong*, the Supreme Court" held in *Bowles v. Russell*, 127 S. Ct. 2360 (2007), that "when an appeal has not been prosecuted in the manner directed, within the time limited by the acts of Congress, it must be dismissed for want of jurisdiction." 509 F.3d at 111–12 (citing *Bowles*, 127 S. Ct. at 2366). In *Bowles*, the Supreme Court held that a court of appeals had no jurisdiction to consider an untimely habeas appeal. The *Bowles* Court found that "[b]ecause Congress decides whether federal courts can hear cases at all, it can also determine when, and under what conditions, federal courts can hear them." 127 S. Ct. at 2365 (citation omitted). Applying *Bowles* to the administrative exhaustion requirement of 8 U.S.C. § 1252(d)(1), the *Grullon* court noted:

> Congress has instructed the courts that they may not review a final order of removal unless the alien has appealed to the BIA. When an exhaustion requirement is statutory and evinces an intent to constrict the ability of courts to adjudicate a class of cases, the limitation is jurisdictional, rather than mandatory only. . . . [B]ecause [such an exhaustion requirement] is a *statutory* limit on the Court's power, it is jurisdictional, not merely mandatory.

509 F.3d at 112 (citing *Magtanong v. Gonzales*, 494 F.3d 1190, 1191 (9th Cir. 2007)); *see also Ruiz-Martinez v. Mukasey*, 516 F.3d 102, 117–19 (2d Cir. 2008) (finding that the court lacked jurisdiction over an untimely petition for review of a final removal order). Under 8 U.S.C. § 1252(d)(1), Massis may not raise an issue on appeal that he did not previously raise before the IJ and BIA. This court has no jurisdiction to consider his argument that reckless endangerment does not constitute a crime of violence.

Massis argues that he had no reason to raise the issue of deportability before the BIA because the DHS appealed a separate issue—the IJ's grant of section 212(c) relief—and "there would have been no reason for Mr. Massis's counsel to enlarge the scope of the appeal or to file a cross-appeal." Petitioner's Br. at 36. This argument is not persuasive. Courts have found that an alien's failure to dispute an issue before an IJ also constitutes a failure to exhaust administrative remedies. *See, e.g.*, *Martinez-Castano v. U.S. Attorney Gen.*, No. 07-16010, 2008 WL 3972443, at *1 (11th Cir. Aug. 28, 2008) (unpublished) (noting that because the alien "did not raise with the IJ his asylum and withholding-of-removal claims based on his political opinion . . . he did not exhaust his administrative remedies" and the court "lack[ed] jurisdiction to consider his claims"); *Gonzalez-Rios v. Mukasey*, Nos. 05-71766, 06-74271, 2008 WL 3561983, at *1 (9th Cir. Aug. 12, 2008) (unpublished) (finding that the alien "did not raise this argument [that his conviction under a California statute "was not categorically a conviction for an aggravated felony"] during any administrative proceedings before the IJ or the BIA" and that the court "lack[ed] jurisdiction to adjudicate an issue where the petitioner failed to exhaust all administrative remedies as of right" (citations omitted)). In his petition, Massis argues that at the time he conceded deportability, "the Maryland Court of Appeals made clear [in interpreting the state's reckless endangerment statute] that [a criminal] defendant's conduct need not involve the use or a substantial risk of the use of force," such that reckless endangerment might not con-

stitute a "crime of violence" under 18 U.S.C. § 16(b). Petitioner's Br. at 20 (citing *Minor v. State*, 605 A.2d 138 (Md. 1992)). By conceding deportability, however, Massis declined to raise the issue of whether reckless endangerment constitutes a crime of violence before the IJ. Because Massis failed to exhaust his administrative remedies, this court has no jurisdiction to consider the substantive legal issue that he now raises.

Citing *Lara v. Trominski*, 216 F.3d 487, 493 (5th Cir. 2000), and other cases, Massis argues that "courts of appeals . . . may consider an alien's assertion that he was erroneously subject to deportation if the alien demonstrates that his deportation would result in a gross miscarriage of justice." Petitioner's Br. at 39. Massis's reliance on a "miscarriage of justice" exception to the jurisdictional bar of 8 U.S.C. § 1252(d)(1) is similarly misplaced. In *Bowles*, the Supreme Court held that courts have "no authority to create equitable exceptions to jurisdictional requirements." 127 S. Ct. at 2366. The *Bowles* Court rejected the habeas petitioner's argument that the Court should excuse his untimely filing because he satisfied the "unique circumstances" doctrine of *Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc.*, 371 U.S. 215 (1962). Emphasizing that "the timely filing of a notice of appeal in a civil case is a jurisdictional requirement," the Court overruled *Harris Truck Lines* and a related case "to the extent they purport to authorize an exception to a jurisdictional rule." *Bowles*, 127 S. Ct. at 2637.

Since *Bowles*, courts of appeals have declined to entertain equitable exceptions to section 1252(d)'s administrative exhaustion requirement. Relying on *Bowles*, the Second Circuit held in *Grullon* that "there is no 'manifest injustice' exception to § 1252(d)'s exhaustion requirement" and that "[i]nsofar as our earlier opinions have held to the contrary, those opinions are overruled." *Grullon*, 509 F.3d at 115. The *Grullon* court reasoned that *Bowles*, in invalidating the "unique circumstances" exception, "likewise invalidates the

'manifest injustice' exception to the jurisdictional bar created by 8 U.S.C. § 1252(d)'s exhaustion requirement." *Id.* The Eighth Circuit similarly relied on *Bowles* in declining to craft a futility exception to section 1252(d)(1)'s administrative exhaustion requirement. *See Bah v. Mukasey*, 521 F.3d 857, 859 (8th Cir. 2008) (citing *Bowles* for the proposition that courts have "no authority to create equitable exceptions to jurisdictional requirements"). Under *Bowles*, Massis may not rely on a "miscarriage of justice" argument to revisit his concession of deportability and circumvent his failure to exhaust administrative remedies. Because we may not create an equitable exception to section 1252(d)(1)'s exhaustion requirement, this court lacks jurisdiction to consider whether reckless endangerment constitutes a crime of violence.

Massis's claim that he is not deportable as a convicted aggravated felon is dismissed for lack of jurisdiction.

III.

For the foregoing reasons, Massis's three petitions for review are

*DENIED IN PART AND DISMISSED IN PART.*